# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

COACH INC., and COACH SERVICES, INC.,

                Plaintiffs,

-vs-                                                   Case No. 6:11-cv-797-Orl-18GJK

JUST A BOUN, LLC, JUSTIN BOUNAUITO,
CHRISTINA BOUNAUITO, and RALPH
BOUNAUITO,

                Defendants,

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration, without oral argument, on the following motion:

> **MOTION:** PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT AND RELATED ORDERS (Doc. No. 16)
>
> **FILED:** September 6, 2011
> _____
>
> **THEREON** it is **RECOMMENDED** that the **MOTION** be **GRANTED in part and DENIED in part**.

## I.    BACKGROUND

On May 12, 2011, Plaintiffs, Coach, Inc., and Coach Services, Inc., filed a Complaint against Defendants, Just A Boun, LLC, Justin Bounauito, Christina Bounauito and Ralph Bounauito, asserting federal claims of trademark counterfeiting, trademark infringement, trademark dilution, trade dress infringement, false designation of origination and copyright infringement, pursuant to the Lanham Act. Doc. No. 1 at ¶ 1. Plaintiffs also assert state law

claims for trademark infringement and dilution, unfair competition, unjust enrichment and violation of Florida's Deceptive and Unfair Trade Practices Act. Doc. No. 1-2 at ¶ 1.

Plaintiffs allege they are the owners of forty-eight trademarks that are used to sell, market and advertise their leather and mixed material products sold under the "Coach" brand. Doc. No. 1 at 3-9. Plaintiffs allege their trademarks are "famous marks, as that term is used in 15 U.S.C. § 1125(c)(1)." Doc. No. 1 at 8, ¶ 17. Plaintiffs allege that Defendants operate a kiosk, under the name JC Cellular, in the Melbourne Square mall. Doc. No. 1 at 10, ¶ 27. On April 8, 2011, Plaintiffs allege their investigator visited JC Cellular and discovered that "Defendants were distributing, advertising, publicly displaying, offering for sale, and/or selling goods bearing logos and source-identifying indicia and design elements that are imitations of one or more of the Coach Trademarks . . . ." Doc. No. 1 at 10, ¶ 27. Specifically, Defendants were selling "counterfeit Coach hardcover cellular phone case[s] bearing the Coach Marks for twenty dollars ($20.00)." Doc. No. 1 at 10, ¶ 28.

Plaintiffs allege their investigator purchased one of the cellular phone cases and further observed "at least 50" hardcover cellular phone cases bearing imitations of Coach trademarks and trade dress. Doc. No. 1 at 10, ¶ 28. Plaintiffs allege the cellular phone case was a counterfeit product and that "Defendants are well aware of the extraordinary fame and strength of the Coach brand, the Coach Trademarks . . . and the incalculable goodwill associated therewith." Doc. No. 1 at 10, ¶ 31. Plaintiffs allege that Defendants are not licensed or authorized to use Plaintiffs' trademarks and the counterfeit items "are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the Counterfeit Products and Coach." Doc. No. 1 at 10, ¶ 31,

11, ¶ 33. Plaintiffs further allege that Defendants' infringing activity "has caused, and continues to cause, substantial and irreparable harm to Coach's goodwill and reputation. In addition, the damages caused by Defendants, which continue to accrue, are especially severe because their Counterfeit Products are cheap, inexpensive and inferior in quality to those authentic to Coach." Doc. No. 1 at 11, ¶ 34. Plaintiffs seek injunctive relief, damages and attorney's fees. Doc. No. 1 at 11, ¶ 35.

On June 13, 2011, Plaintiffs filed their affidavits of service indicating that each of the Defendants was served with a summons and complaint on May 19, 2011. Doc. No. 9. On June 15, 2011, a clerk's default was entered after Defendants failed to plead or otherwise defend. Doc. No. 14. On September 6, 2011, Plaintiffs moved for a default final judgment (hereafter "Motion") seeking statutory damages, pursuant to 15 U.S.C. § 1117(c), and a permanent injunction, pursuant to 15 U.S.C. § 1116. Doc. No. 16 at 5, 12. Thus, Plaintiffs seek judgment on their trademark counterfeiting claim.

In the Motion, Plaintiffs represent that the hardcover cellular phone case acquired by their investigator "bore two (2) counterfeit coach trademarks: (1) the Coach Horse and Carriage mark (design found on the back of the phone case)--Reg. No. 3,441,671; and (2) the Signature C mark (design pattern on phone case) -- Reg. No. 2,822,629." Doc. No. 16 at 10.[1] As a result, Plaintiffs seek statutory damages totaling $300,000, or $150,000 per mark infringed. Doc. No. 16 at 10. Plaintiffs also seek a permanent injunction, asserting that Defendants' trademark infringement has caused irreparable harm. Doc. No. 16 at 12-13. Plaintiffs also seek an award of costs in the sum of $660.18 and an award of attorney's fees equaling $5,830.00. Doc. No. 16

---

[1] The Motion refers to a "wristlet," but that appears to be a scrivener's error because the rest of the Motion and the supporting affidavit clearly refer to hardcover cellular phone cases. *See* Doc. No. 16 at 10.

3

at 12. The Motion is supported by a declaration from Tiffany M. Walden, Plaintiffs' in-house counsel, and David M. Rosemberg, an attorney representing Plaintiffs in this case. Doc. Nos. 16-1; 16-2.

In her declaration, Walden avers that Plaintiffs have expended substantial time, money and resources to developing and promoting the Coach trademarks, such that they "are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products . . . . Coach products have also become among the most popular in the world, with Coach's annual global sales currently exceeding three billion dollars." Doc. No. 16-1 at 6, ¶ 6. Walden also avers that Plaintiff's trademarks have become incontestable, qualify as famous marks, have been continuously used and have never been abandoned. Doc. No. 16-1 7, ¶ 7. In her declaration, Walden has reproduced a picture of the hardcover cellular case that was purchased by Plaintiffs' investigator and avers that it is counterfeit because Plaintiffs do not market or sale such cases, the trademarks used on the case are incorrect or inconsistent with how they are used on authentic merchandise, the quality of the case does not meet Plaintiffs' high standards and Defendants have never been authorized to sell Plaintiffs' products. Doc. No. 16-1 at 8, ¶ 10.

Walden avers that the hardcover cellular phone case infringed upon three of Plaintiffs' trademarks: The Coach & Lozenge Design mark, The Coach Horse and Carriage mark and the Signature C mark. Doc. No. 16-1 at 8-9. Walden further avers that Defendants' acts of selling counterfeit merchandise is likely to deceive the public, consumers and those in the trade into believing that Plaintiffs are associated with the counterfeit goods and that Plaintiffs are likely to suffer irreparable damage and substantial damages. Doc. No. 16-1 at 9, ¶¶ 15-16. Walden

concludes that Coach is less likely to be considered "a prestigious brand if others can own what appears to be a genuine Coach product at considerably less then [sic] the price of the genuine product, Defendants' use of the Coach Trademarks in association with their counterfeit products improperly capitalizes on and damages the goodwill associated with the Coach name." Doc. No. 16-1 at 10, ¶ 18.

On October 12, 2011, the Court entered an order staying any and all actions against Justin and Christina Bounauito, pursuant to 11 U.S.C. § 362(a), as a result of their filing a petition for bankruptcy. Doc. No. 21.

## II. THE LAW

### A. Default Judgment

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed. R. Civ. P. 55(a). Once a Clerk's default has been entered, a party may move for a default judgment pursuant to Rule 55(b)(2). A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 39, 361 (11th Cir. 1987).

### B. Claims for Relief

To prevail on a claim for trademark infringement, Plaintiffs' must show they have a valid mark, Defendants used the mark in commerce in connection with selling or advertising goods and Defendant's actions are likely to cause confusion. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). 15 U.S.C. § 1117(c) permits a court to

5

award statutory damages for using a counterfeit trademark "in connection with the sale, offering for sale, or distribution of goods or services." The court may award between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). If the "court finds that the use of the counterfeit mark was willful," the court may award "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

The Court is accorded wide discretion in determining the amount of statutory damages to award. *Automobili Lamborghini SpA v. Lamboshop, Inc.*, 2008 WL 2743647 at *5 (M.D. Fla. June 5, 2008). Congress added the statutory damages remedy because "'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept . . ., making proving actual damages in these cases extremely difficult if not impossible.'" *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Statutory damages are particularly appropriate when the infringing party has defaulted. *See Chanel, Inc. v. French*, 2006 WL 3826780 at *2 (S.D. Fla. Dec. 27, 2006) ("Statutory damages are apropos when an infringer's nondisclosure of pertinent facts-such as with default-leaves damages uncertain.").

### C. Permanent Injunction

15 U.S.C. § 1116(a) permits a court to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable." The Eleventh Circuit has indicated that the four factor test set forth in *Ebay Inc. v. Mercexchange, LLC*, 547 U.S. 338 (2006), must be applied in determining whether injunctive relief is warranted. *See Axiom Worldwide, Inc.*, 522 F.3d 1211. As explained in *Ebay Inc.*, 547 U.S. at 391, a plaintiff must

establish four elements to be entitled to a permanent injunction: (1) irreparable injury; "(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction."

In trademark infringement actions, injunctive relief is often appropriate because: 1) "there is no adequate remedy at law to redress infringement and [2)] infringement <u>by its nature</u> causes irreparable harm." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (emphasis added) (citing *Processed Plastic Co. v. Warner Commc'ns*, 675 F.2d 852, 858 (7th Cir. 1982)). Further, courts have generally recognized that in such cases, the public interest is "paramount." *BellSouth Advertising & Publishing Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991). Trademark infringement encroaches on "the right of the public to be free of confusion" as well as "the synonymous right of the trademark owner to control his products' reputation." *Id*. (citing *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)).

### D. <u>Attorneys' Fees and Costs</u>

Section 1117(a) provides that a prevailing party shall be entitled to recover "the costs of action," and "[t]he court <u>in exceptional cases</u> may award reasonable attorney fees to the prevailing parties." 15 U.S.C. § 1117(a) (emphasis added). Although Section 1117(a) does not define what costs are recoverable, Courts have interpreted it to mean those costs which are recoverable pursuant to 28 U.S.C. § 1920. *See FSC Franchise Co., LLC, v. Express Corporate Apparel, LLC*, Case No. 8:09-cv-454-T-23TGW, 2011 WL 1226002 at *12 (M.D. Fla. Feb. 28,

2011) (citing *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370-71 (4th Cir. 2001) (finding costs in Section 1117(a) generally means those costs defined in 28 U.S.C. § 1920); *Rib City Group, Inc. v. RCC Rest. Corp.*, 2010 4739493 at *2 (M.D. Fla. 2010) (denying costs which were not recoverable under Section 1920). Section 1920 allows a prevailing part to recover costs associated with filing fees and service of process. 28 U.S.C. § 1920.

Regarding the recovery of attorneys' fees under Section 1117(a), "exceptional cases" are those that involve conduct that is "malicious, fraudulent, deliberate, and willful," or in which there is evidence of fraud or bad faith. *See Tire Kingdom, Inc. v. Morgan Tire & Auto. Inc.*, 253 F.3d 1332, 1335-36 (11th Cir. 2001); *Burger King Corp., v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994). A party's default alone is not an exceptional circumstance. *See generally FSC Franchise Co., LLC*, 2011 WL 1226002 at *8-9. For example, in *FSC Franchise Co.*, the Court stated that defaulting does not constitute an exceptional circumstance, but the Court ultimately found that the facts of that case warranted attorneys' fees where the infringing party had previously been in a licensing agreement with the holder of the mark and, once the agreement was terminated, it continued to use the mark without permission. *Id*.

### III. ANALYSIS

Defendants have admitted all well-pled allegations of the Complaint by virtue of their default. These include admitting that Plaintiffs own the Coach trademarks, they are used in commerce, Defendants used the Coach trademarks in connection with selling the hardcover cellular phone cases and that Defendants' use is likely to cause confusion. Defendants have also admitted that they have been knowingly and intentionally using Plaintiff's trademarks without permission and "are well aware of the extraordinary fame and strength" of Plaintiffs' trademarks. Doc. No. 1 at 10, ¶ 30. As such, Defendants' have not only admitted they infringed Plaintiffs'

trademarks, but they have done so willfully. *See All-Star Mktg. Group, LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 621 (S.D.N.Y 2011) (indicating that by virtue of a default, a defendant is deemed a willful infringer). Accordingly, the Court has the discretion to award between $1,000 and $2,000,000 in damages for every mark Defendants infringed.

In determining the amount of damages to award for trademark infringement, courts have looked at seven factors: 1) the expenses saved and the profits reaped; 2) plaintiff's lost revenues; 3) the value of the trademark; 4) the deterrent effect on others; 5) whether defendant's conduct was willful or innocent; 6) whether defendant has cooperated in providing particular information to assess the value of the infringing material; and 7) the potential for discouraging defendant. *See id.* at 622; *Chanel, Inc.*, 2009 WL 2496586 at *6.

There is no record evidence to determine the first and second factors. As to the third factor, Defendants have admitted, by virtue of their default, the well-pled allegation that Plaintiffs have "expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Coach Marks. As a result, products bearing the Coach Marks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products . . . ." Doc. No. 1 at 4, ¶ 12. Defendants have also admitted that "Coach products have also become among the most popular in the world . . . ." Doc. No. 1 at 4, ¶ 12. In her declaration, Walden avers that "Coach continues to invest substantial sums in promoting its products and services offered under the Coach Trademarks." Doc. No. 16-1 at 6, ¶ 6. The fact that Defendants willfully counterfeited Plaintiffs' trademarks also supports a finding that they are high value marks. Accordingly, the Court finds the marks at issue are high value marks. The high value of the marks supports granting a large award.

The desirability of deterring others from infringing on Plaintiffs' marks and Defendants'

willful infringement (fourth and fifth factors) also support granting a large award. *See All-Star Marketing Group, LLC*, 775 F. Supp. 2d at 623; 15 U.S.C. § 1117(c)(2). Because Defendants defaulted, they obviously did not cooperate as provided in the sixth factor. The seventh factor, potential for discouraging Defendants, also cuts in favor of granting a large award. Plaintiffs have established two of their marks were counterfeited: The Coach Horse and Carriage mark and the Signature C mark. Consequently, it is **RECOMMENDED** that the Court award Plaintiffs statutory damages of $150,000 per counterfeit mark, for a total award of $300,000 in statutory damages.

It is also **RECOMMENDED** that the Court enter a preliminary injunction. The well-pled allegations of the Complaint establish that Plaintiffs have developed goodwill among consumers and the public that would be undermined if Defendants are not prohibited from selling merchandise bearing Plaintiffs' trademarks. The well-pled allegations of the Complaint also establish that Defendants' actions are likely to lead to confusion about the origin and authenticity of the merchandise, particularly when they are not manufactured to Plaintiffs' quality standards. Thus, Plaintiffs have established irreparable injury and that monetary damages are inadequate to compensate for the injury. *See Chanel, Inc.*, 2009 WL 2496586 at *8 (finding these factors were met on similarly pleaded facts).

In equitably balancing the hardships between Plaintiffs' and Defendants', Defendants have failed to show any hardship they would suffer. Plaintiffs on the other hand are suffering irreparable damage to the goodwill associated with their trademarks. Entering an injunction would serve the public interest by protecting consumers and the public from being misled and confused about the source and authenticity of the counterfeit goods Defendants sell with Plaintiffs' trademarks. Accordingly, all of the factors weigh in favor of granting Plaintiffs'

request for a permanent injunction. *See id.*

Plaintiffs' request for costs in the amount of $660.18, should be subtracted by $15.31 because Plaintiffs cannot recover for computerized legal research costs. *See Gant v. Kash N' Karry Food Stores, Inc.*, 2010 WL 4393222 at *1 (M.D. Fla. Oct. 31, 2010). Consequently, it is **RECOMMENDED** that Plaintiffs be awarded $644.87 in costs. It is also **RECOMMENDED** that Plaintiffs' request for attorney's fees be **GRANTED**. Defendants' willful violations in using Plaintiffs' trademarks make this case an extraordinary one, entitling Plaintiffs to an award of attorney's fees. *See Chanel, Inc.*, 2009 WL 2496586 at *9; *All-Star Mktg. Group, LLC*, 775 F. Supp. 2d at 628 (cases cited therein).

Rosemberg's declaration avers that he provided 13.8 hours of legal services at a rate of $375 per hour. Doc. No. 16-2. Rosemberg avers that Michelle De Vera performed 2.5 hours of legal services at a rate of $250 per hours and that a paralegal performed .2 hours of legal services at a rate of $150 per hour. Doc. No. 16-2. In total, Rosemberg avers that $5,830 in legal services was provided. Doc. No. 16-2. It is recommended the Court find the hours, hourly rates and total amount requested to be reasonable.

### IV. CONCLUSION

Based on the forgoing, it is **RECOMMENDED** that the Court:

1. **GRANT** the Motion and enter a default judgment against Just A Boun, LLC and Ralph Bounauito for $300,000;

2. Enter a permanent injunction enjoining Just A Boun, LLC and Ralph Bounauito and each of its officers, agents, servants, employees, and attorneys, and all other persons, firms or corporations acting in concert or in participation with them from:

a. Manufacturing, procuring, distributing, shipping, retailing, selling, advertising or trafficking, in any merchandise, including apparel, sunglasses, bags, jewelry and/or related merchandise, not authorized by the Plaintiffs, bearing unauthorized simulations, reproductions, counterfeits, copies or colorable imitations of the Plaintiff's Trademarks, or bearing a design or image which is of a substantially similar appearance to the Plaintiffs listed in the Complaint and in the Declaration of Tiffany Walden;

b. From passing off, including or enabling others to sell or pass off, as authentic products produced by the Plaintiffs or otherwise authorized by the Plaintiffs, any product not manufactured by the Plaintiffs or produced under the control or supervision of the Plaintiffs and approved by the Plaintiffs, which utilize any of the Plaintiffs' Trademarks listed in the Complaint and in the Declaration of Tiffany Walden;

c. From committing any act calculated to cause purchasers to believe that the Defendant(s) products are those sold under the control and supervision of the Plaintiffs, or are sponsored, approved or guaranteed by the Plaintiffs, or are connected with and produced under the control or supervision of the Plaintiffs;

d. From further diluting and infringing Plaintiffs' Trademarks and damaging their goodwill;

e. Engage in any other activity constituting unfair competition with Coach or that will cause the distinctiveness of the Coach Trademarks to be diluted;

and

f.  From causing, aiding, and/or abetting any other person from doing any act proscribed under (a) through (d) above.

3. Award Plaintiffs $644.87 in costs;

4. Award Plaintiffs $5,830 in attorney's fees; and

5. **DENY** the Motion as to Justin Bounauito and Christina Bounauito in light of the bankruptcy stay that was entered.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Recommended** in Orlando, Florida on November 8, 2011.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Presiding District Judge
Counsel of Record
Unrepresented Party